# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: CHESAPEAKE EXPLORATION, L.L.C. (Market Enhancement Clause) | § § § § § § § § | CIVIL ACTION NO 4:23-cv-03464<br><br>JUDGE CHARLES ESKRIDGE |

### MEC Class Plaintiffs' Appeal of Bankruptcy Court's Order Declaring Settlement Null and Void

# TABLE OF CONTENTS

**Page**

I.    Nature and Stage of the Proceeding ........................................................ 1

II.   Statement of Facts ................................................................................ 2

     A.    The *Demchak* Litigation in Pennsylvania ..................................... 2

     B.    Chesapeake's Bankruptcy and the MEC Settlement ........................ 3

     C.    The Fifth Circuit's Finding of No Jurisdiction in the Bankruptcy
          Court .......................................................................................... 6

     D.    Judge Jones's Order ................................................................... 8

III.  Issues Requiring Resolution ................................................................... 9

IV.   Standard of Review ............................................................................... 9

V.    Argument ............................................................................................ 10

     A.    Judge Jones did not have jurisdiction to rule on the validity of the
          MEC Settlement. ........................................................................ 10

     B.    The MEC Settlement Agreement remains a valid and binding
          contract. .................................................................................... 12

          1.    Judge Jones did not analyze the relevant law or contract
               language. ........................................................................ 13

          2.    The MEC Settlement is binding pending Court approval. .............. 16

VI.   Conclusion and Relief Sought ............................................................... 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Behrend v. Comcast Corp.*,
No. CIV.A. 03-6604, 2012 WL 4459582, at *6 (E.D. Pa. Sept. 25, 2012) ................ 14

*Brown v. ITT Consumer Fin. Corp.*,
211 F.3d 1217 (11th Cir. 2000) .................................................................... 15

*Matter of Chesapeake Energy Corp.*,
70 F.4th 273 (5th Cir. 2023) ........................................................ 6, 7, 11, 12

*Curiale v. Lenox Group, Inc.*,
No. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ........................... 13, 16, 17

*De Pombo v. IRINOX N. Am., Inc.*,
No. 20-CV-20533, 2020 WL 6290153 (S.D. Fla. Oct. 27, 2020) .............................. 15

*Feite v. Neumann*,
19-cv-4280, 2020 WL 670135 (E.D. Pa. Feb. 11, 2020)...................................... 14, 15

*Hill v. Udren L. Offs., P.C.*,
No. CV 13-419, 2020 WL 6785537 (W.D. Pa. Nov. 18, 2020) ................................. 16

*Malarik v. Aramark at PNC Park*,
No. CV 18-660, 2018 WL 3120035 (W.D. Pa. June 4, 2018)................................... 10

*Prusky v. Reliastar Life Ins. Co.*,
No. CIV.A.03-6196, 2005 WL 226148 (E.D. Pa. Jan. 26, 2005)............................... 14

*In re Renaissance Hosp. Grand Prairie Inc.*,
713 F.3d 285 (5th Cir. 2013) ......................................................................... 9

*In re San Patricio Cty. Cmty. Action Agency*,
575 F.3d 553 (5th Cir. 2009) ......................................................................... 9

*Stanley v. Cent. Intel. Agency*,
639 F.2d 1146 (5th Cir. 1981) ...................................................................... 10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83, 94 (1998).............................................................................. 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*The Mayor v. Cooper*,
  73 U.S. (6 Wall.) 247, 250 (1868) ................................................................. 11

*Topiwala v. Wessell*,
  509 F. App'x 184 (4th Cir. 2013) ............................................................... 16

*W.G. v. Senatore*,
  18 F.3d 60 (2d Cir. 1994)........................................................................ 11

**Treatises**

Restatement (Second) of Contracts § 184 ......................................................... 14

Restatement (Second) of Contracts § 184 Comment (a).................................... 15

I.      <u>**Nature and Stage of the Proceeding**</u>

This is an appeal of the bankruptcy court's order granting the motion of Chesapeake Energy Corporation ("Chesapeake") to declare null and void a settlement that Chesapeake entered into in March 2021 with a class of gas lessors in the Commonwealth of Pennsylvania.

In March 2021, as it emerged from bankruptcy, Chesapeake made a deal. It would pay $5 million to a class of gas leaseholders in Pennsylvania and change its royalty payment calculation methodology in ways that would financially benefit the class. In exchange, Chesapeake would receive a release of royalty-related claims. Chesapeake and the class presented that deal to the bankruptcy court for approval. An objector appealed the approval of the settlement, and the Fifth Circuit held that the bankruptcy court lacked jurisdiction to assess the settlement, in part because the settlement did not primarily concern Chesapeake's pre-bankruptcy business.

Under basic contract law principles, the deal that Chesapeake struck with the class was still valid and binding; the parties had only presented it to the wrong court for approval. Rather than go to the Middle District of Pennsylvania and seek approval of the settlement there, however, Chesapeake tried to walk away from the agreement, and went back to the *bankruptcy court* – which the Fifth Circuit had just held to lack jurisdiction over the agreement – to declare the settlement agreement null and void.

With no acknowledgment of the Fifth Circuit's holding, former bankruptcy judge David Jones granted Chesapeake's motion. Exercising jurisdiction over a settlement which the Fifth Circuit held he did not possess, Judge Jones, with virtually no analysis,

held that because the settlement approval exceeded his authority, the settlement itself did not "exist."

As Plaintiffs explain below, the decision to consider Chesapeake's motion at all, not to mention the holding, was error. The settlement exists; what did *not* exist was Judge Jones's authority to hold that the settlement was null and void. His holding contravened the Fifth Circuit's decision vacating the prior approval of the MEC class settlement, and his finding that the settlement is null and void ignored Pennsylvania's law of contracts, which Judge Jones did not apply.

Chesapeake remains bound to the agreement it made with the MEC class and should not be permitted to renege on this agreement. Instead, this Court should vacate the bankruptcy court's order and hold that the parties may proceed to the Middle District of Pennsylvania so that the district court may consider whether to approve this class settlement.

## II.    **Statement of Facts**

### A.    **The *Demchak* Litigation in Pennsylvania**

This case's roots stretch back more than a decade – to a 2013 lawsuit filed by a proposed class of lessors in the Commonwealth of Pennsylvania whose gas leases with Chesapeake include a "Market Enhancement Clause" ("MEC") or "Ready for Sale or Use Clause." Those lessors brought a gas royalty underpayment class action against Chesapeake in the Middle District of Pennsylvania on behalf of other lessors with the MEC term in their leases with Chesapeake. *See Demchak Ptnrs. Ltd. P'ship v. Chesapeake Appalachia, L.L.C.*, 3:13-cv-02289-MEM (M.D. Pa.) ("*Demchak*"). The

MEC Class Plaintiffs alleged that Chesapeake breached these leases and underpaid royalties by deducting costs that were incurred prior to the gas entering the interconnect point of a transmission pipeline. The parties ultimately presented a class settlement to the Court in the Middle District of Pennsylvania, which they later amended and presented again; approval was pending at the time that Chesapeake declared bankruptcy in 2020. The Pennsylvania Attorney General's office filed its own royalty payment-related case against Chesapeake in 2016. That case, too, was stayed as a result of Chesapeake's bankruptcy.

The *Demchak* case remains pending in the Middle District of Pennsylvania; the parties filed status reports with the Court throughout Chesapeake's bankruptcy.

### B.      Chesapeake's Bankruptcy and the MEC Settlement

Chesapeake filed for bankruptcy protection on June 28, 2020. Chesapeake and counsel for the MEC Class continued to negotiate throughout the bankruptcy and ultimately reached a class settlement in March 2021. The Pennsylvania Attorney General's office and Chesapeake negotiated and reached their settlement on February 9, 2021, just before the MEC Class finalized its settlement. R001911 (Attorney General Settlement). The MEC Settlement was interrelated, as a matter of substance and implementation, with Chesapeake's settlement with Pennsylvania's Attorney General. The Attorney General's settlement specifically referenced the MEC plaintiffs' settlement in describing how that settlement would be implemented, R001914-15 (¶ 3.2),[1] and the

---

[1] Unless otherwise noted, paragraph references are to the MEC Settlement Agreement.

MEC Settlement, in turn, recited that it was part of Chesapeake's "broader effort to achieve global resolution across the Commonwealth of Pennsylvania as to any royalty-related litigation or disputes." R001926 (Recital D).

  The MEC Settlement created a $5 million fund to be distributed on a pro rata basis to the MEC class, along with the $5.3 million settlement in the Attorney General's case. The MEC Settlement, together with the Attorney General's settlement, created, for the first time, the opportunity for class members to elect how Chesapeake calculates and pays their royalties. The settlement provides for the selection among three options– (1) the higher of the "In-Basin Index Price Without Post-Production Deductions" and the "Netback Price"; (2) the In-Basin Index Price Without Post-Production Deductions; or (3) the Netback Price. R001934-35 (¶ 6.1-¶ 6.3). Under the In-Basin Index Price Without Post-Production Deductions option, royalties are calculated based on the weighted average of two index prices (the Leidy Hub and the TGP Zone 4-300) and paid *without* deduction of post-production costs. The netback price is the weighted average sales price Chesapeake receives for its production month sales to third parties, less post-production costs and severance taxes. If no election is made, the class member's royalties will be based on Option 1, which is the option most beneficial to the class member and the economically rational one, as the class member's royalties under that option will be calculated on the *higher* of the two payment methodologies. This default to the higher of the two options is not found in the Attorney General's settlement; it was a term included in the MEC Settlement alone.

The MEC Settlement includes additional improvements to Chesapeake's royalty calculation methodology not found in the Attorney General's settlement. It precludes Chesapeake from deducting from its calculation of Class Members' royalties volumes of gas used as fuel, lost, or unaccounted for, and instead obligates Chesapeake to pay royalties on 100 percent of such volumes. R001936 (¶ 6.6). It also prohibits Chesapeake from deducting marketing fees as post-production costs, and requires that deductions for post-production costs attributable to services provided by affiliates or third parties be the actual, reasonable costs of such services. *Id.* (¶ 6.7). Also, the Attorney General settlement is binding on Chesapeake alone, but the MEC Settlement preserves all future benefits by amending the leases and otherwise ensuring that Chesapeake's successors and assigns will be bound by the settlement. R1935-36 (¶ 6.5). This means that, absent the MEC Settlement, Chesapeake may revert to the netback price – even if it is less advantageous to an MEC class member – if that class member did not make an affirmative election to one payment methodology, may take volumetric deductions, deduct marketing fees, and pay or deduct inflated prices for affiliate and third party services.

The MEC Settlement provides that it "is and will be governed by the laws of the Commonwealth of Pennsylvania." R001940 (¶ 18.1).

In seeking approval of the MEC Settlement from the bankruptcy court, Chesapeake acknowledged that MEC class members' claims "were discharged on the Effective Date pursuant to the Plan and the Confirmation Order." R001899-1900. However, Chesapeake went on to explain that the MEC Settlement was a bargain it was

entering into for sound and considered business reasons; it was agreeing to the deal because "the MEC Settlement… reduce[s] the likelihood of future royalty related litigation by allowing all putative class members to elect how their royalties are calculated on a go-forward basis. The Reorganized Debtors, in their reasonable business judgment, believe that the approximately $5,000,000 settlement payment contemplated under the MEC Settlement [is] likely less than the attendant cost and possible liability of potential future royalty related litigation, including potential class action litigation." *Id.*; *see also* R001903 (explaining that notwithstanding discharge of past claims, the settlement reduces risk of future litigation and provides "closure" as part of "resetting Chesapeake's relationship with its Pennsylvania lessors"). In other words, Chesapeake explained that it was paying $5 million and changing its royalty calculation methodology for something valuable, namely, avoidance of future royalty-related litigation.

### C.   The Fifth Circuit's Finding of No Jurisdiction in the Bankruptcy Court

The bankruptcy court and district court approved the MEC class settlement over the objection of an MEC class member, who appealed the settlement's approval to the Fifth Circuit Court of Appeals. In defending the settlement, Chesapeake took the position that the MEC agreement covered not only pre-bankruptcy conduct, but also "(2) post-discharge, pre-settlement monetary harm from underpayment of royalties; and (3) imminent, future monetary harm from underpayment of royalties." R003288 and 003291; *see also* R003293 and 003295 (Chesapeake Response Brief).

The Fifth Circuit limited its review of the settlement to the question of whether the lower courts had jurisdiction to approve the settlement. *See Matter of Chesapeake Energy*

2921402.2

*Corp.*, 70 F.4th 273, 280 (5th Cir. 2023) ("We need only discuss whether the bankruptcy and district courts had jurisdiction under 28 U.S.C. § 1334 to hear and decide these 'class' claims."). The Fifth Circuit first held that the settlement did not fall within the court's "core" bankruptcy jurisdiction because the MEC class did not file timely proofs of claim in the bankruptcy proceeding. *Id.* at 281-83. It then held that the case did not fall within "related to" jurisdiction, in part by rejecting Chesapeake's contention that the settlement did not deal principally with Chesapeake's post-confirmation business. *Id.* at 283. Rather, the Fifth Circuit held, the settlement affects and modifies royalty payment calculations going forward. *Id.* at 284.

The Fifth Circuit concluded its opinion with instructions to dismiss for lack of jurisdiction. *Id.* at 285. The district court entered an order of dismissal on July 13, 2023. R000625 (*In re Chesapeake Energy Corp.*, H-21-1215, Dkt. 83).

On July 17, 2023, Judge Mannion, who is overseeing the *Demchak* action in the Middle District of Pennsylvania, ordered the parties to provide a status report in light of the Fifth Circuit's decision. After conferring with Chesapeake, counsel for the MEC class informed Judge Mannion that it would be presenting a motion to enforce the settlement agreement in the coming weeks. R000068. Chesapeake then moved for an order: (i) Enforcing the Confirmation Order and Plan Against the Reorganized Debtors, and (ii) Declaring the MEC Settlement and Non-MEC Settlement Null and Void. Dkt. 322 in 20-23329. R000032.

Plaintiffs opposed, arguing: 1) the bankruptcy court lacked jurisdiction to rule on the MEC Settlement under the plain language of the Fifth Circuit's decision; 2)

Chesapeake's request to dismiss pre-Effective Date claims was moot, as all parties agreed those claims were discharged (while post-Effective Date claims remained very much alive); and 3) if the Court reaches the question, Chesapeake could not renege on the MEC Settlement under ordinary contract principles through its attempt to declare it null and void. *See* R000075.

D.   **Judge Jones's Order**

On August 31, 2023, former Bankruptcy Judge David Jones granted Chesapeake's motion. R000101-102 ("Order"). Judge Jones's Order disposed of the question of the MEC Settlement's validity in a single sentence ("The MEC Settlement and the Non-MEC Settlement are null and void."). R000102. At the hearing on Chesapeake's motion the same day, Judge Jones provided scarcely any reasoning for his ruling, and in fact, disclaimed the need to provide any. As he explained, "I've lived in this circuit my entire judicial career. I know exactly what they mean when they say what they said." Appendix Exhibit A (Hearing Tr.), at 18.[2] Judge Jones did not engage with the Fifth Circuit's actual holding – that the district court and bankruptcy court lacked jurisdiction to consider the settlement. Instead, he held, without reference to anything in the Fifth Circuit's decision, the Fifth Circuit's decision meant that Chesapeake "didn't have the authority to enter into [the MEC Settlement], because it contravened my final non-appealable confirmation order and plan." From this, Judge Jones concluded that the MEC and non-MEC Settlements "don't exist." *Id.* at 18-19. Judge Jones did not explain the basis for

---

[2] On February 6, 2024, this Court granted Plaintiffs' motion to supplement the record to include this transcript. *See* Dkt. 8.

exercising his jurisdiction over an agreement that the Fifth Circuit held he does not have jurisdiction to consider, and he did not address the MEC Class's argument that the MEC Settlement remains a binding and enforceable contract pending approval under Rule 23, to be interpreted under Pennsylvania law.

Judge Jones resigned approximately six weeks later, on October 16, 2023.

## III.    Issues Requiring Resolution

1) Did Judge Jones err in exercising jurisdiction over the MEC Settlement after the Fifth Circuit held that the bankruptcy court and district court did not possess jurisdiction over the MEC Settlement?

2) Did Judge Jones err in holding that the MEC Settlement was null and void by failing to apply the law governing the continuing viability of that agreement?

## IV.    Standard of Review

"When reviewing a bankruptcy court's decision in a core proceeding, a district court functions as a[n] appellate court and applies the standard of review generally applied in federal court appeals." *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 293 (5th Cir. 2013) (internal quotation marks and citation omitted) (affirming district court's decision reversing and vacating bankruptcy court decision). The district court reviews the bankruptcy court's conclusions of law and resolution of mixed questions of law and fact *de novo*, and its factual findings for clear error. *See In re San Patricio Cty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009). Accordingly, this Court's review is *de novo*.

V.    <u>**Argument**</u>

The bankruptcy court's decision to grant Chesapeake's motion to nullify the MEC Settlement should be vacated for two reasons. First, Judge Jones lacked jurisdiction to rule on the validity or enforceability of the MEC Settlement. Any such rulings must come from the Middle District of Pennsylvania, as the settlement and the claims at issue concern – as the Fifth Circuit held – Chesapeake's ongoing, post-bankruptcy conduct. Second, it was error as a matter of substance to hold that the MEC Settlement was null and void. That ruling was contrary to the parties' intent, as reflected in the language of the agreement itself, and to the contract principles that govern the agreement. Judge Jones examined neither the applicable contract language nor applied the governing law.

A.    <u>**Judge Jones did not have jurisdiction to rule on the validity of the MEC Settlement.**</u>

In response to Chesapeake's motion to declare the MEC Settlement to be null and void, the MEC Class argued that the Bankruptcy Court lacked jurisdiction to hear and decide Chesapeake's motion at all. The Fifth Circuit's holding was unambiguous: the MEC Settlement deals primarily with Chesapeake's post-bankruptcy operations, and so cannot be considered by the bankruptcy court. Inexplicably, Judge Jones blew past this threshold, dispositive question, never explaining how he retained the authority to make holdings involving a settlement agreement over which the Fifth Circuit plainly held he lacked jurisdiction.

As the MEC Class explained in the proceedings below, "Once subject matter jurisdiction is found not to exist, 'the only function remaining to the court is that of

announcing the fact and dismissing the case.'" *Malarik v. Aramark at PNC Park*, No. CV 18-660, 2018 WL 3120035, at *1 (W.D. Pa. June 4, 2018) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). *See also, e.g., Stanley v. Cent. Intel. Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981) ("A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction."). "Simply stated using the common law approach, when a determination is made that no jurisdiction lies, the district court has 'no power to do anything but to strike the case from the docket.'" *W.G. v. Senatore*, 18 F.3d 60, 64 (2d Cir. 1994) (quoting *The Mayor v. Cooper*, 73 U.S. (6 Wall.) 247, 250 (1868)). Consistent with this rule and with the Fifth Circuit's crystal-clear directive, Judge Rosenthal dismissed the underlying case. R000625. That should have been the end of the Texas chapter of this case's long history.

Judge Jones did not address this obvious problem. In his brief remarks prior to ruling, he acknowledged, "Post-effective date, my jurisdiction ends." Tr. at 13. This acknowledgment, paired with the Fifth Circuit's holdings that the MEC Settlement primarily concerned Chesapeake's post-confirmation business and that the bankruptcy court lacked jurisdiction to consider and approve a settlement concerning such claims, *In re Matter of Chesapeake*, 70 F.4th at 283-85, should have led to the opposite conclusion that Judge Jones drew here. Instead, Judge Jones drew a conclusion untethered to the text of the Fifth Circuit's opinion – that because he lacked the jurisdiction to approve the MEC Settlement, "there is no settlement because I didn't approve it." Tr. at 18. But the Fifth Circuit said nothing about whether the settlement exists or not; it held only that the bankruptcy court could not consider and approve it. It could not then follow that the

bankruptcy court would somehow retain or be vested jurisdiction over a subsequent motion involving the same settlement, in which Chesapeake would seek to walk away from the agreement that it negotiated.

The Fifth Circuit's holding was limited and clear – the bankruptcy court should not have assessed the MEC Settlement. The MEC Settlement remains a binding contract between the MEC Class Plaintiffs, and Judge Jones was without authority to declare it null and void. As explained below, that holding was also wrong as a matter of substance.

### B.    The MEC Settlement Agreement remains a valid and binding contract.

Judge Jones should not have reached the question of whether the MEC Settlement was "null and void," because he lacked and lacks jurisdiction over the agreement at all. The question of whether the MEC Settlement is binding on Chesapeake is for the district court in the Middle District of Pennsylvania to decide, because that it is the Court with jurisdiction over the claims of the MEC Class.[3]

Having asserted jurisdiction he did not have to decide the question, Judge Jones did not apply the law or standard that was supposed to govern the question of the MEC Settlement's continued validity. The MEC Class Plaintiffs argued – and will continue to argue in the appropriate forum – that the MEC Settlement is still binding and enforceable. The Fifth Circuit held only that the parties had brought it to the wrong court for approval.

---

[3] While Chesapeake may argue that class members' claims are moot due to changes that Chesapeake implemented following the approval of the Pennsylvania Attorney General's settlement, the MEC class continues to possess post-Effective Date claims. Indeed, Chesapeake recognized in its motion below that the Fifth Circuit explicitly acknowledged that MEC class members "have a remedy" for such claims (Mot. ¶ 33 (quoting *Matter of Chesapeake*, 70 F.4th at 285).

Whether the MEC Class Plaintiffs are correct will depend on the appropriate court's interpretation of the agreement's severability clause, an inquiry that under the agreement itself, "is and will be governed by the laws of the Commonwealth of Pennsylvania." R001940 (¶ 18.1). Judge Jones did not examine the language of the agreement itself or apply Pennsylvania law in holding that the settlement was null and void. This, too, was error.

1. **Judge Jones did not analyze the relevant law or contract language.**

The question of the MEC Settlement's ongoing enforceability is answerable by reference to the text of the agreement itself. The MEC Settlement includes a severability provision that provides that "[i]n the event that a court of competent jurisdiction enters a final judgment or decision holding invalid any ***nonmaterial*** provision of this Settlement Agreement, the remainder of this Settlement Agreement shall be fully enforceable." ¶ 18.2 (emphasis added). Conversely, "[i]f a court of competent jurisdiction holds invalid or materially modifies any ***material*** provision of this Settlement Agreement, including but not limited to the provisions set forth in paragraph 6, either Party shall be entitled to dissolve this Settlement Agreement and withdraw from the Settlement." *Id.* (emphasis added). In moving to nullify the agreement, Chesapeake invoked this provision to assert that the Fifth Circuit's holding that there is no jurisdiction over the agreement in the bankruptcy court allows it to walk away from its agreement. *See* Mot. ¶ 46. Chesapeake provided no analysis, case law, or support from the factual record for that request, and

Judge Jones in turn cited none. Nor did he even acknowledge the presence of the severability provision.

"Ordinary principles of contract law govern settlement agreements." *Curiale v. Lenox Grp., Inc.*, No. 07-1432, 2008 WL 4899474, at *5 (E.D. Pa. Nov. 14, 2008). The question of whether the definition of "Court" is a material term under the contract is governed by Pennsylvania law. *See* ¶ 18.1 (providing for application of Pennsylvania law). Pennsylvania follows the Second Restatement of Contracts. *See, e.g., Prusky v. Reliastar Life Ins. Co.*, No. CIV.A.03-6196, 2005 WL 226148, at *3 (E.D. Pa. Jan. 26, 2005). Under the Restatement, an unenforceable term may be severed if it is not "an essential part of the agreed exchange." Restatement (Second) of Contracts § 184. "Terms that are deemed material to a class action settlement agreement generally include the monetary terms, the allocation of settlement proceeds, and a description of the claims to be released." *Behrend v. Comcast Corp.*, No. CIV.A. 03-6604, 2012 WL 4459582, at *6 (E.D. Pa. Sept. 25, 2012).

Judge Jones made no mention of the applicability of Pennsylvania law, and did not attempt to identify the material terms of the contract. Here, those terms are Chesapeake's monetary payment, the release of claims, and of course, Chesapeake's agreement to change its royalty payment calculation methodology going forward, as set out in Paragraph 6, the precise paragraph highlighted as a material term in the agreement's severability provision. In granting Chesapeake's request to nullify the contract, Judge Jones did not point to anything that the parties negotiated about payment, modification of

royalty payments, or the scope of the release, that is in any way affected by which court approves the settlement or where the case is venued.

To put it another way, the parties can perform under the agreement regardless of how "court" is defined. "To determine whether the offending clause is an essential part of the agreed exchange or simply an ancillary aspect, [courts] examine the parties' intent." *Feite v. Neumann*, 19-cv-4280, 2020 WL 670135 at *4 (E.D. Pa. Feb. 11, 2020). Chesapeake explicitly agreed to use "best efforts" to "implement the terms of this Settlement Agreement and to garner Final Approval." ¶ 2. This, along with the severance clause itself, indicates the parties' intent to effectuate the agreement. *See id.* at *4-5 (severing nonessential provision and holding that presence of severance clause is evidence of parties' intent as to what are essential and ancillary parts of the agreement). Further, Chesapeake knows how to draft unambiguously nullifying language. Paragraph 6.8 of the Attorney General's settlement provides that the agreement "shall become null and void if not approved in full by the United States Bankruptcy Court for the Southern District of Texas, Houston Division." R001920. No such language exists in the MEC Settlement.

Chesapeake cannot and did not show below that the definition of "court" is or was "an essential part of the agreed exchange." As comment (a) to Section 184 explains, "Whether the performance is an essential part of the agreed exchange depends on its relative importance in the light of the entire agreement between the parties." Restatement (Second) of Contracts § 184 cmt. (a). The core of the agreement is the monetary relief and practice changes in exchange for a release; which court approves the agreement is

- 15 -

ancillary and incidental. Chesapeake can still perform, and will get its class release in return. The definition of "court" has no bearing on that exchange.[4]

Judge Jones did not engage in any of the required analysis to determine whether the parties still had an enforceable agreement after the Fifth Circuit's holding that the parties had presented the settlement to a court that lacked jurisdiction over it. That analysis leads to one conclusion: the MEC Settlement remains binding on the parties.

## 2.   The MEC Settlement is binding pending Court approval.

Judge Jones also ignored case authorities that hold that a class action settlement is binding on the parties even while judicial approval remains pending. Numerous courts have held that "judicial approval of a class action settlement is a condition *subsequent* to the contract and does not affect the legality of the proposed settlement agreement." *Hill v. Udren L. Offs., P.C.*, No. CV 13-419, 2020 WL 6785537, at *5 (W.D. Pa. Nov. 18, 2020) (citation and quotation omitted) (emphasis added). As the *Hill* court explained, "Where the parties have executed an agreement, a party cannot avoid its independent contractual obligations simply because a change in law confers upon it a benefit that could have altered the settlement calculus." *Id.* (citation and quotation omitted). Similarly, in *Curiale*

---

[4] Courts have held that the choice of forum or location identified in a contract to be nonessential. *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) (finding unavailability of choice of forum to be an "ancillary logistical concern," rather than "an integral part of the agreement"); *De Pombo v. IRINOX N. Am., Inc.*, No. 20-CV-20533, 2020 WL 6290153, at *6 (S.D. Fla. Oct. 27, 2020) ("[T]he choice of arbitral forum in this case is not integral to the parties' Agreement because it does not pervade the Agreement, but rather suggests an ancillary logistical concern."); *Topiwala v. Wessell*, 509 F. App'x 184, 186 (4th Cir. 2013) (enforcing settlement agreement because it contained all essential terms, and that missing terms, including venue provision, were "nonessential").

*v. Lenox Group, Inc.*, No. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008), the

Court granted preliminary of a class action settlement over the objection of the defendant,

who hoped to capitalize on the legislature's elimination of a cause of action that the

parties had agreed to settle. The Court enforced the agreement despite the parties

conditioning the agreement on Court approval, *id.* at *3, just as the parties did here, and

pointed to other circuit courts that have similarly found that court approval is a condition

*subsequent* of a class agreement, which "does not affect the binding nature of the

agreement." *Id.* at *7 (citing *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir.

2008)).

There is nothing different about this case. Chesapeake remains bound by the

agreement it entered into, and is obligated to continue to use best efforts to seek approval

in the appropriate court. Judge Jones' ruling to the contrary was error.

**VI.**   **Conclusion and Relief Sought**

For these reasons, the Court should vacate Judge Jones' order declaring the MEC

Settlement to be null and void and hold that the parties may engage in any further

proceedings concerning the settlement in the Middle District of Pennsylvania.

- 17 -

Respectfully submitted,

Dated:  February 8, 2024       */s/ Daniel E. Seltz*
Daniel E. Seltz (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
dseltz@lchb.com

Larry D. Moffett (*pro hac vice*)
LAW OFFICE OF LARRY D. MOFFETT, PLLC
P.O. Box 1418
39 County Road 231
Oxford, MS 38655
Telephone:  (662) 298-4435
Cell:   (662) 801-3670
larry@larrymoffett.com

Michelle R. O'Brien
THE O'BRIEN LAW GROUP LLC
2800 Stafford Avenue, Box 3034
Scranton, PA 18505
Telephone: (570) 209-7901
Facsimile: (570) 309-0147
mobrien@theobrienlawgroup.com

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NE
Suite 200
Washington, D.C. 20016
Telephone: 202 789 3960
charles@cuneolaw.com

John W. ("Don") Barrett
BARRETT LAW GROUP
Post Office Drawer 927
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com

Charles E. Schaffer
LEVIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:  (215) 592-1500
Facsimile: (215) 592-4663
CSchaffer@lfsblaw.com

*Counsel for MEC Class Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have caused to be served a true and correct copy of the foregoing on counsel of record via electronic case filing.

Executed on this the 8th day of February, 2024.

*/s/ Daniel E. Seltz*
Daniel E. Seltz

2921402.2